JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSEPH WEISSBURG, et al, | ) | No. CV 07-1921 RGK(MANx) |
| Plaintiffs, | ) | |
| v. | ) | **ORDER RE COURT TRIAL AND** |
| | ) | **FINAL JUDGMENT** |
| LANCASTER SCHOOL DISTRICT, et al, | ) | |
| Defendants. | ) | |

**I.   <u>INTRODUCTION</u>**

Plaintiff, Joseph Weissburg, filed this action on March 23, 2007. Plaintiff's son, Edward Weissburg ("Edward"), who is a student at Lancaster School District, has been diagnosed with a mental disability and receiving special educational services through the District. Plaintiff and Defendant School District were involved in a series of disputes under the Individuals with Disabilities Education Act ("IDEA"), which were resolved in administrative hearings. Those hearings involved determination of Edward's disability category and special educational needs.

This Court is not asked to reevaluate the rulings of the Administrative Court. Rather, Plaintiff seeks to recover attorneys' fees incurred as a result of those administrative hearings. Plaintiff bases his claim on IDEA 20 U.S.C. § 1415(i)(3)(B), which allows courts to award attorneys' fees to "the prevailing party who is the parent of a child with disability." Plaintiff alleges that he is the prevailing party in the Administrative disputes with Defendant Lancaster School District and requests that this Court award him attorneys' fees accordingly. Plaintiff requests $32,665.38 in attorneys' fees incurred during the administrative hearings, as well as additional attorneys' fees for this action plus interest.

## II.   FINDINGS OF FACT

1.   Edward Weissburg was born May 30, 2002. (Pl.'s Br. Ex. 5 at 5.) Edward's parents noticed developmental delays during Edward's infancy and contacted the North Los Angeles County Regional Center ("Regional Center") for assistance. (Pl.'s Br. Ex. 5 at 5.)

2.   In May 2005, the Regional Center referred Edward's parents to Dr. Larry E. Gaines, a licensed Clinical Psychologist, who concluded that Edward met the criteria for certain classifications of autism. (Pl.'s Br. Ex. 5 at 5.) The Regional Center also referred Edward to the District for a determination by the District of his eligibility for special educational services. (Pl.'s Br. Ex. 5 ¶ 10.)

3.   In August 2005, Defendant Lancaster School District conducted an initial assessment of Edward's special educational services needs. (Pl.'s Br. Ex. 5 at 7.) The assessment results estimated

Edward to be in the mild range of mental retardation. (Pl.'s Br. Ex. 5 at 7-8.) Defendant Lancaster School District's assessment team noted Dr. Gaines' evaluation of Edward and his finding that Edward displayed autistic-like behaviors. (Pl.'s Br. Ex. 5 at 8-9.) However, Defendant concluded that "such behaviors . . . were to be associated with [Edward's] severe global developmental delays" rather than autism. (Pl.'s Br. Ex. 5 at 8-9.)

4.  Edward's parents disagreed with Defendant and requested that Defendant rely on Dr. Gaines' diagnosis for the purpose of evaluating Edward's special educational services needs. (Pl.'s Br. Ex. 5 at 9.)

5.  It is undisputed, as the Administrative Court noted, that although Defendant was required to consider the Regional Center's evaluation conducted by Dr. Gaines, Defendant was not bound by that assessment. (Pl.'s Br. Ex. 5 at 9.)

6.  Dissatisfied with the District's assessment, Edward's parents requested an Independent Education Evaluation ("IEE") at Defendant's expense. (Pl.'s Br. Ex. 5 at 9.) Defendant agreed and offered Edward's parents a list of recommended psychologists. (Pl.'s Br. Ex. 5 at 9.) However, since Dr. Gaines was not on that list, Edward's parents refused to obtain the IEE. (Pl.'s Br. Ex. 5 at 9.)

7.  Based on Defendant's assessment of Edward's eligibility category and special educational needs, Defendant convened an initial Individualized Educational Program ("IEP") meeting on August 9, 2005, where Edward's level of performance and annual goals and objectives were identified. (Pl.'s Br. Ex. 5 at 10-12.)

8.   Edward's parents disagreed with his IEP, and at their request, another IEP meeting was convened on November 4, 2005. (Pl.'s Br. Ex. 5 at 14-15)  Again, the results were not satisfactory to the parents, and another IEP meeting was held on April 21, 2006. (Pl.'s Br. Ex. 5 at 15.)

9.   Since Edward's parents remained dissatisfied with Defendant's assessment and Edward's educational program, Plaintiff filed a "Request for Mediation and Due Process Hearing Form" with the Special Education Division of Office of Administrative Hearings on April 26, 2006.[1] (Def.'s Resp. Br. Ex. 9.) There, Plaintiff requested that Defendant:

   a.   "Change Edward's special education eligibility label from 'Mental Retardation' to 'Autism.'" (Def.'s Resp. Br. Ex. 9.)

   b.   "[P]rovide for a private assessment of Edward by an educational psychologist and/or psychiatrist at school expense . . . ." (Def.'s Resp. Br. Ex. 9.)

   c.   "Place Edward into a full-day mainstream Pre-Kindergarten program with non-disabled peers . . . ." (Def.'s Resp. Br. Ex. 9.)

   d.   "[P]rovide transportation for Edward at school expense." (Def.'s Resp. Br. Ex. 9.)

   e.   "Provide Edward with a one-on-one specially-trained paraprofessional designed to assist children with autism disorders at school expense." (Def.'s Resp. Br. Ex. 9.)

---

[1]Plaintiff had filed a similar request at a prior date, but that filing was unilaterally withdrawn by Plaintiff during the negotiations with Defendant Lancaster School District. (Pl.'s Br. Ex. 5 at 13.)

1    f.    Provide Edward with an inclusion specialist . . . at school
2          expense." (Def.'s Resp. Br. Ex. 9.)
3    g.    [P]rovide a biannual formal observation and assessment of
4          Edward by an educational psychologist . . . ." (Def.'s
5          Resp. Br. Ex. 9.)
6  10. In an attempt to respond to Plaintiff's request for an IEE,
7      Defendant conducted another assessment, in which all previous
8      assessment results, as well as levels of Edward's performance
9      were reviewed. (Pl.'s Br. Ex. 5 at 16-19.) The assessment report
10     was released on June 14, 2006. (Pl.'s Br. Ex. 5 at 16.) In that
11     assessment, it was established that Edward has autistic-like
12     behaviors, but Defendant again concluded that those behaviors
13     were "characteristic of overall development delays noted in
14     [Edward's] mental retardation." (Pl.'s Br. Ex. 5 ¶ 59-61.)
15     Therefore, Defendant refused to conduct an IEE at Defendant's
16     expense. The parents refused to accept the June 14, 2006
17     assessment results.
18  11. On August 2, 2006, Defendant Lancaster School District filed a
19      Due Process Complaint Notice with the Special Education Division
20      of Office of Administrative Hearings. (Def.'s Resp. Br. Ex. 11.)
21      There, Defendant requested that the Administrative Court
22      determine the appropriateness of Defendant's June 14, 2006
23      assessment of Edward's disability category. (Def.'s Resp. Br. Ex.
24      11.)
25  12. On August 4, 2006, parties to the two aforementioned
26      administrative hearings stipulated that the hearings be
27      consolidated "for the purpose of hearing the issue of whether
28      Student is entitled to an Independent Educational Evaluation at

5

1 | public expense . . . ." (Def.'s Resp. Br. Ex. 12.)

2 | 13. The Administrative Court's opinion broke down the dispute into

3 | eight separate Counts. The Administrative Court found for the

4 | parents on one Count (Count V) of the combined due process

5 | hearings "to the extent that District failed to properly identify

6 | [Edward's] eligibility category(s)." (Pl.'s Br. Ex. 5 at 29, 32.)

7 | The Administrative Court determined that "evidence supports a

8 | finding that Student was both autistic and mentally retarded."

9 | (Pl.'s Br. Ex. 5 at 29.) Yet, the Administrative Court still

10 | found that, "while the conclusions [of the June 14, 2006 report]

11 | were incorrect the assessment was appropriate." (Pl.'s Br. Ex. 5

12 | at 29.)

13 | 14. The Administrative Court found for Defendant Lancaster School

14 | District on the rest of the Counts as follows:

15 | a.    "The initial assessment conducted by the District on August

16 | 9, 2005, was appropriate and the District properly

17 | determined that Student was not eligible under the category

18 | of autistic-like behaviors but was eligible for special

19 | education services as a student with mental retardation."

20 | (Pl.'s Br. Ex. 5 at 27.)

21 | b.    "[T]he District eligibility determination was appropriate."

22 | (Pl.'s Br. Ex. 5 at 27.)

23 | c.    "There was no basis established that obligated the District

24 | to conduct an assessment" in the November 4, 2005 IEP.

25 | (Pl.'s Br. Ex. 5 at 27.)

26 | d.    "District properly identified Student's unique needs and

27 | provided Student a FAPE" (Free Appropriate Public

28 | Education). (Pl.'s Br. Ex. 5 at 28.)

e.   "[Edward's] IEP's (sic) were developed based upon his
     unique educational needs . . . ." (Pl.'s Br. Ex. 5 at 28.)

f.   "[Edward] was not entitled to one-to-one paraprofessional
     specially trained in autism." (Pl.'s Br. Ex. 5 at 29.)

g.   "[Edward was not] entitled to placement in a full-day pre
     kindergarten program. . . ." (Pl.'s Br. Ex. 5 at 30.)

h.   Edward was not entitled to transportation paid by
     Defendant. (Pl.'s Br. Ex. 5 at 31.)

i.   Edward was not entitled to an inclusion specialist. (Pl.'s
     Br. Ex. 5 at 31.)

15.  In all of the aforementioned proceedings, as well as in the
     current case, Edward Weissburg and Plaintiff have been
     represented by Edward's paternal grandmother.

III. **DISCUSSION**

     Congress enacted IDEA to "ensure that all children with
disabilities have available to them . . . a free appropriate public
education [("FAPE")] . . . ." 20 U.S.C. §1400(d)(1)(A). Under IDEA,
schools districts are responsible for the cost of special services
rendered to a student for whom specialized educational services are
provided. 20 U.S.C. § 1401(8). These specialized programs are designed
and delivered through Individualized Educational Programs ("IEPs"). In
case of a dispute between the school district and a minor child's
parents about the adequacy of the child's IEP, either party may
request a due process hearing to determine whether the child has
received a FAPE.  IDEA 20 U.S.C. § 1415(b)(6).  IDEA allows courts to
award attorneys' fees to "the prevailing party who is the parent of a
child with disability." 20 U.S.C. 1415(i)(3)(B)

The Ninth Circuit has held that a prevailing party is the party "'which succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Parents of Student W v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489 (9th Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The prevailing party's "success results in a 'material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Id.* (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)). "'Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*,' the plaintiff cannot claim fees as a prevailing party." *Id.* (quoting *Texas State Teachers Ass'n*, 489 U.S. at 792).

Here, Plaintiff lost on all Counts in the Due Process hearings except one. (Pl.'s Br. Ex. 5 at 29, 32.)  The only objective that Plaintiff achieved in the Due Process hearings is the recognition that Edward's eligibility must be categorized as autistic *in addition* to mentally retarded. (Pl.'s Br. Ex. 5 at 29.) However, the Administrative Court specifically held that "[Edward] was not eligible [to receive services] under the category of autistic-like behaviors but was eligible for special education services as a student with mental retardation." (Pl.'s Br. Ex. 5 at 27.) In other words, the Due Process hearings did not entitle Edward to any educational services he was not entitled to before. Therefore, in order to award Plaintiff with attorneys' fees, the Court must determine whether a mere alteration in the label of Edward's eligibility category amounts to a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas*

*State Teachers Ass'n*, 489 U.S. at 792. This Court finds that it does not.

Congress has specifically stated that IDEA was enacted to "ensure that all children with disabilities have available to them . . . a free appropriate public education . . . ." 20 U.S.C. §1400(d)(1)(A). Therefore, IDEA's statutory purpose seems to focus only on whether the disabled student is receiving certain services and not whether his disability is categorized under a certain title. The Department of Education agrees. The Regulations of the Offices of Department of Education state in pertinent part that "[n]othing in [IDEA] requires that children be classified by their disability so long as each child who has a disability [under IDEA] . . . and needs special education and related services is regarded as a child with a disability . . . ." 34 C.F.R. § 300.111. Similarly, the Seventh Circuit has held that the "IDEA concerns itself not with labels, but with whether a student is receiving a free and appropriate education." *Heather v. State of Wisconsin*, 125 F.3d 1045, 1055 (7th Cir. 1997).

Therefore, IDEA does not require that Edward be classified as autistic or mentally retarded, as long as he is regarded as a child with disability and receives necessary specialized educational services. Here, the Administrative Court found that "District properly identified Student's unique needs and provided Student a FAPE" (Free Appropriate Public Education). (Pl.'s Br. Ex. 5 at 28.) In other words, what Congress and the Department of Education intended to achieve by promulgating the IDEA--providing Edward with free appropriate public education--had already been achieved prior to the Due Process hearings filed by Plaintiff. In light of this finding, the Plaintiff's success in forcing Defendant to categorize Edward's

1    eligibility as both autistic and mentally retarded did not result in

2    any "material alteration of the legal relationship of the parties in a

3    manner which Congress sought to promote in the fee statute." *Texas*

4    *State Teachers Ass'n*, 489 U.S. at 792. Rather, Plaintiff's success was

5    "purely technical or *de minimis*." *Id.* Therefore, Plaintiff is not the

6    prevailing party and is not entitled to award of attorneys' fees under

7    IDEA.[2]

8

9    **IV.   CONCLUSION**

10          For the reasons described above, the Court **grants judgment in**

11   **favor of Defendants** Lancaster School District and Janis Rivera in her

12   official capacity as the District's Director of Student's Services.

13

14   **March 28, 2008**                           _____

15   Dated                                              R. Gary Klausner

16                                            United States District Judge

17

18

19

20

21

22

23

24

25   _____

26          [2] Defendant also argues that Plaintiff is not entitled to
     attorneys' fees because Edward and his parents are represented by
27   Edward's paternal grandmother. Since the Court finds that
     Edward's parents are not the prevailing party in the
28   administrative hearings, the Court need not address Defendant's
     alternative argument as to why fees should not be awarded.